**REDACTED VERSION**

**PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH THE UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

No. 12-402C
(Judge Allegra)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

REEMA CONSULTING SERVICES, INC.,
Plaintiff,

v.

UNITED STATES,
Defendant.

---

**DEFENDANT'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

---

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

OF COUNSEL:

CAPTAIN MICHAEL E. BARNICLE
Trial Attorney
Contract and Fiscal Law Division
U.S. Army Legal Services Agency
Fort Belvoir, VA 22060-5546

JANE POLING
Associate Counsel
Research, Development, and Engineering
    Command
Aberdeen Proving Ground, MD 21005

BRIAN M. SIMKIN
Assistant Director

NICHOLAS JABBOUR
Trial Attorney
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0338
Facsimile: (202) 307-0972
E-mail: Nicholas.Jabbour@usdoj.gov

*Attorneys for Defendant*

August 10, 2012

## TABLE OF CONTENTS

ISSUES PRESENTED...........................................................................................................2

STATEMENT OF FACTS ...................................................................................................2

I.    EVENTS LEADING TO CONTRACT AWARD (JULY 2009 TO
    SEPTEMBER 2011)...................................................................................................2

        A.    The Issuance Of The Solicitation...........................................................2

        B.    Proposals Are Submitted By Three Offerors .........................................4

        C.    The Evaluation Of The Proposals ..........................................................6

                1.    Summary Of Ratings..................................................................6

                2.    The Technical Merit Factor .......................................................8

                     a.    The Proposed Approach Subfactor .................................9

                     b.    Overall Technical Rating ...............................................11

                3.    The Past Performance Factor .....................................................11

                4.    The Cost Factor...........................................................................12

        D.    The Responsibility Determination For SMRC .......................................13

        E.    The Decision To Award To SMRC ........................................................14

II.    EVENTS AFTER SMRC BEGINS PERFORMANCE (SEPTEMBER 2011 TO
    PRESENT)..................................................................................................................14

        A.    The Issuance Of Task Order 1 To SMRC...............................................14

        B.    The SBA's Initial Decision Regarding Reema's Size Protest Against SMRC.....15

        C.    The Army's Analysis Following The SBA's Decision.............................15

        D.    The Current Task Orders .........................................................................16

        E.    The SBA's Decision On Appeal ..............................................................18

        F.    The Army Takes Steps To Issue A New Solicitation ..............................18

ARGUMENT ............................................................................................................... 19

I.      THIS COURT'S REVIEW IS DEFERENTIAL TO THE AGENCY ............................. 19

        A.    Standard For Procurement Challenges .................................................. 19

        B.    Standard For Judgment Upon The Administrative Record .................................. 20

II.     JUDGMENT IN FAVOR OF THE GOVERNMENT IS WARRANTED BECAUSE
        REEMA CANNOT DEMONSTRATE THAT IT HAS STANDING ........................... 21

        A.    To Demonstrate Standing, Reema Must Show That It Had A "Substantial
              Chance" Of Receiving The Contract ................................................... 22

        B.    Reema Has Not Shown That Its Technical Rating Was Irrational ................... 23

        C.    Reema Has Not Put Forth A Scenario Under Which It Would Have
              Prevailed In A Best Value Analysis ................................................... 25

        D.    Reema Has Not Shown That It Is A Small Business For This Procurement ........ 27

III.    THE ARMY'S DECISION TO CONTINUE ITS CONTRACT WITH SMRC AFTER
        THE SBA'S DECISIONS IS CONSISTENT WITH APPLICABLE LAW .................... 29

        A.    The Army Was Permitted To Continue Its Contract With SMRC Following
              The SBA's Initial Decision ........................................................... 29

        B.    The Army Was Permitted To Continue Its Contract With SMRC Following
              The SBA's Appeal Decision ........................................................... 30

IV.     REEMA'S OTHER ASSERTIONS OF ERROR DO NOT WITHSTAND
        SCRUTINY ....................................................................................... 33

        A.    The Army's Delay In Making Award Is Not Actionable .......................... 33

        B.    A Contractor Is Not Required To List A Specific NAICS Code To
              Compete For A Procurement ......................................................... 35

        C.    No Preaward Notice Is Required For 8(a) Procurements .......................... 36

        D.    Reema Misstates The Facts And Law Concerning The Certificate Of
              Competency ......................................................................... 36

        E.    The Price Negotiation Memorandum Does Not Contain The Errors
              Suggested By Reema ................................................................. 39

        F.    The Personal Attacks On The Contracting Officer Are Unfounded .............. 39

V.      REEMA SHOULD BE PRECLUDED FROM ARGUING THAT THE ARMY
        MUST ISSUE A NEW SOLICITATION BASED ON REEMA'S FALSE
        DEADLINES ...................................................................................................... 41

VI.     REEMA CANNOT ESTABLISH THAT IT IS ENTITLED TO ANY RELIEF ............ 43

        A.      Reema Has Not Demonstrated Entitlement To Bid And Proposal Costs ............. 43

        B.      Reema Has Not Demonstrated Entitlement To Costs And Attorney Fees Under
                The Equal Access To Justice Act ........................................................................ 44

        C.      Reema Has Not Demonstrated Entitlement To Injunctive Relief ........................ 45

                1.      Reema Has Not Demonstrated That It Will Suffer Irreparable
                        Harm If The Court Does Not Issue a Permanent Injunction ..................... 46

                2.      Reema Has Not Demonstrated That It Is In The Public Interest
                        To Grant A Permanent Injunction ............................................................. 47

                3.      The Balance Of Harms Favors The Government ...................................... 47

CONCLUSION ........................................................................................................................ 48

## TABLE OF AUTHORITIES

### FEDERAL COURT CASES

*Aero Corp. v. United States,*
  38 Fed. Cl. 237 (1997)..................................................................................... 47

*American Fed. of Govt. Employees v. United States,*
  298 F.3d 1298 (Fed. Cir. 2001) ...................................................................... 22

*Am-Pro Protective Agency Inc. v. United States,*
  281 F.3d 1234 (Fed. Cir. 2002) ...................................................................... 41

*Banknote Corp. of Am. v. United States,*
  56 Fed. Cl. 377 (2003)................................................................................ 20, 26

*Bannum, Inc. v. United States,*
  404 F.3d 1346 (Fed. Cir. 2005) .................................................................. 20, 21

*Beta Analytics Int'l, Inc. v. United States,*
  67 Fed. Cl. 384 (2005)................................................................................ 19, 25

*Blue & Gold Fleet, L.P. v. United States,*
  492 F.3d 1308 (Fed. Cir. 2007) ...................................................................... 34

*Boston Harbor Development Partners, LLC v. United States,*
  103 Fed. Cl. 499 (2012)................................................................................... 22

*Bromley Contracting Co. v. United States,*
  15 Cl. Ct. 100 (1988)...................................................................................... 20

*Camp v. Pitts,*
  411 U.S. 138 (1973) ........................................................................................ 21

*CCL Serv. Corp. v. United States,*
  48 Fed. Cl. 113 (2000)..................................................................................... 21

*Chapman Law Firm Co. v. United States,*
  67 Fed. Cl. 188 (2005)..................................................................................... 46

*Cincom Sys., Inc. v. United States,*
  37 Fed. Cl. 663 (1997)................................................................................ 19, 45

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971), .................................................................................................... 19

*Coflexip & Services, Inc. v. United States,*
961 F.2d 951 (Fed. Cir.1992) ....................................................................................... 43

*CW Gov't Travel, Inc. v. United States,*
   46 Fed. Cl. 554 (2000) .................................................................................................. 45

*Dismas Charities, Inc. v. United States,*
   75 Fed. Cl. 59 (2007) .................................................................................................... 23

*E.W. Bliss Co. v. United States,*
   77 F.3d 445 (Fed. Cir. 1996) ........................................................................................ 26

*eBay, Inc. v. MercExchange, L.L.C.,*
   547 U.S. 388 (2006) ...................................................................................................... 47

*Florida Power & Light v. Lorion,*
   470 U.S. 729 (1985) ...................................................................................................... 21

*HomeSource Real Estate Asset Servs., Inc. v. United States,*
   94 Fed. Cl. 466 (2010) .................................................................................................. 23

*Impresa Construzioni Geom. Domenico Garufi v. United States,*
   238 F.3d 1324 (Fed. Cir. 2001) ............................................................................... 19, 20

*Lermer Germany GmbH v. Lermer Corp.,*
   94 F.3d 1575 (Fed. Cir. 1996) ...................................................................................... 45

*Linc Gov't Servs., LLC v. United States,*
   96 Fed. Cl. 672 (2010) .................................................................................................. 22

*Lion Raisins, Inc. v. United States,*
   52 Fed. Cl. 629 (2002) .................................................................................................. 43

*M.W. Kellogg Co. v. United States,*
   10 Cl. Ct. 17 (1986) ...................................................................................................... 19

*Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.,*
   463 U.S. 29 (1983) ........................................................................................................ 26

*Myers Investig. & Secur. Servs., Inc. v. United States,*
   275 F.3d 1366 (Fed. Cir. 2002) .................................................................................... 22

*OAO Corp. v. United States,*
   49 Fed. Cl. 478 (2001) .................................................................................... 46

*Office Depot, Inc. v. United States,*
   95 Fed. Cl. 517 (2010) .................................................................................... 20

*PGBA, LLC v. United States,*
   389 F.3d 1219 (Fed. Cir. 2004) ...................................................................... 45

*Rex Serv. Corp. v. United States,*
   448 F.3d 1305 (Fed. Cir. 2006) ...................................................................... 22

*San Diego Beverage & Kup v. United States,*
   997 F. Supp. 1343 (S.D. Cal. 1998) ............................................................... 46

*Smith v. United States,*
   34 Fed. Cl. 313 (Fed. Cl. 1995) ..................................................................... 34

*Software Eng'g Servs., Corp. v. United States,*
   85 Fed. Cl. 547 (2009) .................................................................................... 25

*Spherix, Inc. v. United States,*
   62 Fed. Cl. 497 (2004) .................................................................................... 46

*Tech Sys., Inc. v. United States,*
   50 Fed. Cl. 216 (2001) .................................................................................... 21

*Tenacre Found. v. INS,*
   78 F.3d 693 (D.C. Cir. 1996) .......................................................................... 46

*Virginia Ry. Co. v. Sys. Fed'n No. 40,*
   300 U.S. 515 (1937) ........................................................................................ 45

*Wisconsin Gas Co. v. FERC,*
   758 F.2d 669 (D.C. Cir. 1985) ........................................................................ 46

*Yakus v. United States,*
   321 U.S. 414 (1940) ........................................................................................ 45

## BOARD CASES

*Greystones Consulting Group, Inc.,*
   No. N-402835 (GAO June 28, 2010) ............................................................... 32

*Spectrum Security Services, Inc.*,
  Nos. B-297320.2 & B-297320.3 (GAO Dec. 29, 2005)........................................ 31, 32

## STATUTES

5 U.S.C. § 706(2)(A)................................................................................19

28 U.S.C. § 1491(b) ........................................................................19, 22, 34

28 U.S.C. § 2412(d) ..................................................................................44

## REGULATIONS

13 C.F.R. § 121.103(h)(4)............................................................................15

13 C.F.R. § 121.1001(a)(2)(i) .......................................................................40

13 C.F.R. § 121.1009 ......................................................................29, 30, 31, 32

13 C.F.R. § 121.402(a).................................................................................35

13 C.F.R. § 124.501(h) ................................................................................35

13 C.F.R. § 134.302(d) ................................................................................40

13 C.F.R. § 121.603 ....................................................................................42

48 C.F.R. (FAR) § 14.404-1(d)......................................................................33, 34

48 C.F.R. (FAR) § 15.101-1 ...........................................................................26

48 C.F.R. (FAR) § 15.503................................................................................36

48 C.F.R. (FAR) § 19.302(h)(1) .......................................................................30

48 C.F.R. (FAR) § 19.602-4(b)........................................................................37

48 C.F.R. (FAR) § 19.809................................................................................36

48 C.F.R. (FAR) § 31.201-3(a).........................................................................43

48 C.F.R. (FAR) § 31.201-4 ............................................................................43

48 C.F.R. (FAR) § 31.205-18(c).......................................................................43

48 C.F.R. (FAR) § 33.101..............................................................................................31

48 C.F.R. (FAR) § 52.233-3 ..........................................................................................31

75 Fed. Reg. 9129-01 (Mar. 1, 2010) ............................................................................32

**REDACTED VERSION**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(BID PROTEST)

| | | |
|---|---|---|
| REEMA CONSULTING SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-402C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S CROSS-MOTION FOR JUDGMENT
ON THE ADMINISTRATIVE RECORD AND RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Defendant, the United States, respectfully submits this cross-motion for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC), and response to the motion of plaintiff, Reema Consulting Services, Inc. (Reema), for judgment on the administrative record (Pl. Br.). In this post-award bid protest, Reema challenges the September 22, 2011 decision of the United States Army, Aberdeen Proving Ground (Army), to award a contract to support operations at the Edgewood Chemical Biological Center (ECBC) under Request for Proposals No. W911-SR-09-R-0018 (Solicitation) to SM Resources Corporation (SMRC). In addition, Reema challenges the Army's decision to continue the contract (but not exercise options on the contract) after the Small Business Administration (SBA) made a final determination, on March 27, 2012, that SMRC was not an eligible small business for the procurement.

The Army's award of the contract to SMRC was proper because the Army reasonably determined, upon taking into account the factors specified in the Solicitation, that SMRC offered the best value to the Government. In addition, the Army's decision to continue the contract with

SMRC following the SBA's decision, but to not issue any additional task orders and to not exercise any options on existing task orders, was fully consistent with SBA regulations. Accordingly, the Court should not sustain Reema's protest. This cross-motion should be granted, and Reema's motion should be denied. In support of this cross-motion, we rely upon the complaint, the administrative record, and the following brief.

## ISSUES PRESENTED

1.      Whether Reema lacks standing because it did not have a "substantial chance" of being awarded the contract at issue.

2.      Whether the Army's decision that SMRC's proposal presented the best value to the Government was a proper exercise of its discretion.

3.      Whether the Army's decision to continue its contract with SMRC following the SBA's decision that SMRC was not an eligible small business, but to not exercise any options, was consistent with applicable law.

## STATEMENT OF FACTS

### I.    EVENTS LEADING TO CONTRACT AWARD (JULY 2009 TO SEPTEMBER 2011)

#### A.    The Issuance Of The Solicitation

ECBC is the nation's principal facility for chemical and biological defense research, and is headquartered at the Edgewood Area of Aberdeen Proving Ground, Maryland. Among other things, ECBC is involved in technology development, equipment evaluation, product support, and scientific research in support of the Army's ongoing efforts to protect the United States from chemical and biological attacks. AR40.

2

In July 2009, the Army issued the Solicitation seeking a contractor to provide environmental, safety, health, and research support for operations at ECBC. AR37, 40. The Solicitation indicated that the Army intended to award an indefinite-delivery, indefinite-quantity contract to the successful offeror, with task orders for specific items to be completed. AR38. The minimum value of the task orders would be $100,000, and the maximum value would be $48.5 million. *Id.* Task orders could encompass a variety of mission critical duties, including collection and analysis of chemical and biological samples, site inspections of workplaces handling chemical and biological agents, maintenance and testing of equipment, and operation of ECBC's information technology system. *See* AR40-45.

Offerors were required to submit a proposal containing three volumes: Technical/ Management, Past Performance, and Cost. AR94. In the Technical and Cost volumes, offerors were to respond in detail to two sample evaluation tasks included in the Solicitation, and the Army reserved the right to issue task orders for these two tasks at the price proposed by the successful offeror. AR96-99. The first sample evaluation task involved support for the Environmental Monitoring Laboratory through the collection and analysis of air and environmental samples. AR76-82. The second sample evaluation task involved managing an information technology database. AR82-85.

The Solicitation notified potential offerors that award "will be made to the responsible offeror whose proposal conforms to the solicitation requirements and represents the best value to the Government using the tradeoff process." AR102. The tradeoff process was described as permitting "tradeoffs among the specific evaluation factors" such that award could be made "to other than the lowest priced offeror or other than the highest technically rated offeror." *Id.* The Army indicated that it "intends to award without discussions." *Id.*

3

The Solicitation specified three evaluation factors: (1) Technical/Management, (2) Past Performance, and (3) Cost. AR102. The Technical factor was "significantly more important than the Past Performance Factor," and the Past Performance factor was "more important than the Cost Factor." AR103.

The Technical factor was to receive an adjectival rating for technical and management merit, among the choices of Excellent, Good, Satisfactory, or Unsatisfactory. AR103-04. In addition, under the Technical factor, an adjectival rating would also be assigned for proposal risk, among the choices of Low Risk, Moderate Risk, or High Risk. *Id.* Past Performance would be evaluated using the choices of Low Risk, Moderate Risk, High Risk, or Unknown Risk. AR106. With respect to Cost, the Solicitation indicated that the Government would calculate a "probable cost of performance," which was defined as "the Government's best estimate of the contract cost resulting from the offeror's proposal," which could "involve an adjustment of the [offeror's] proposed cost, and fee, whenever it is determined that the proposed cost does not reflect the probable cost of performance." AR107.

Finally, the Solicitation indicated that only small businesses in the SBA's 8(a) program could compete for the award. AR88. The relevant size threshold to determine whether a business was small was $7 million in annual receipts, corresponding to North American Industry Classification System (NAICS) code 541620, representing Environmental Consulting Services. AR1.

**B.     Proposals Are Submitted By Three Offerors**

Three entities that were part of the SBA's 8(a) program submitted proposals by the August 24, 2009 deadline: SMRC, Reema, and ███████████████████.

4

The incumbent contractor for the Army was STEM International, Inc. (STEM), and the incumbent subcontractor was ████████████████████ A key aspect of both Reema's and SMRC's proposals was to team up with one of these incumbent entities in order to provide the experience needed to perform the work under the contract.

SMRC proposed using STEM as its subcontractor. SMRC indicated that ██████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

Reema developed its proposal in conjunction with ████████, and proposed using ███████ as its subcontractor. Reema (which used the acronym RCSI in its proposal, an abbreviation of Reema Consulting Services, Inc.) proposed ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

5

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████

## C.    The Evaluation Of The Proposals

The evaluation of the proposals was delayed because of "[d]ifficulties ensuring sufficient personnel support," leading to "numerous delays with finalizing the subgroup reports." AR1031. Nevertheless, all offerors extended their proposals on numerous occasions without indicating any objections to doing so. *See* AR953-70 (SMRC's confirmations of proposal extensions); AR971-85 (Reema's confirmations of proposal extensions); AR986-1014 (████████ confirmations of proposal extensions). The evaluation process is summarized below.

### 1.    Summary Of Ratings

A Technical/Management Evaluation Subgroup prepared a Technical Evaluation Report (AR1031) and a Cost Realism Report (AR1047) regarding the proposals, a Cost Subgroup prepared a Cost Analysis Report (AR1079), and a contract specialist prepared a Past

Performance Report (AR1015). These reports were summarized in a Source Selection

Evaluation Team Report, which contained a table compiling the evaluation metrics for the three

offerors, as follows:



|  | Factor 1: Technical/Management | | Factor 2: Past Performance | Factor 3: Cost (Evaluation Tasks 1+2) | |
|---|---|---|---|---|---|
| ███ | ███ ███ | ███ ███ | ███ | ███ ███ | ███ |
|  | ███ ███ | ███ | | ███ | ███ |
| Reema | ███ ███ | ███ | ███ | ███ | ███ |
|  | ███ | ███ | | ███ | ███ |
| SMRC | ███ ███ | ███ | ███ | ███ | ███ |
|  | ███ | ███ | | ███ | ███ |

AR1105.

The Source Selection Team Report concluded by stating that ███████

████████████████████████████

████████████████████████████

████████████████████████ The Report concluded that SMRC's proposal presented "the

apparent best value to the government." *Id.*

The Source Selection Authority (SSA), who was also the contracting officer, reviewed all

of the reports and the underlying proposals, ███████████████

████████████████████



██████████████████ The final evaluation ratings were therefore as follows:

| | Factor 1: Technical/Management | | Factor 2: Past Performance | Factor 3: Cost (Evaluation Tasks 1+2) | |
|---|---|---|---|---|---|
| ████ | ████████ | ████████ | ██████ | ██████ | ████████ |
| | ██████ | ████ | | ██ | ████████ |
| **Reema** | ████████ | ████████ | ██████ | ██████ | ████████ |
| | ██████ | ████ | | ██ | ████████ |
| **SMRC** | ████████ | ████████ | ██████ | ██████ | ████████ |
| | ████████ | ████ | | ██ | ██████ |

AR1198. The SSA ultimately agreed with the Source Selection Team that SMRC presented the best value to the Government. AR1214.

The specific ratings for the offerors are discussed in more detail below.

### 2.   The Technical Merit Factor

The Technical factor had four subfactors: (a) Proposed Approach, (b) Personnel Plan, (c) Management Plan and Tools, and (d) Facilities. AR103. "[T]he Proposed Approach Subfactor [was] more important than the Personnel Plan, the Management Plan and Tools, and Facilities Subfactors." *Id.*

The final subfactor ratings for the offerors were as follows:

8

| | | Proposed Approach | Personnel Plan | Management Plan/Tools | Facilities |
|---|---|---|---|---|---|
| ██████ | Technical Merit | ██████ | ██████ | ██████ | ██████ |
| | Proposal Risk | █████ | █████ | █████ | █████ |
| Reema | Technical Merit | ██████ | ██████ | █████ | █████ |
| | Proposal Risk | █████ | ██████ | █████ | █████ |
| SMRC | Technical Merit | █████ | ██ | █████ | ██████ |
| | Proposal Risk | █████ | █████ | █████ | █████ |

AR1199, 1211. ██████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████

Reema appears to take issue only with its proposed approach subfactor rating and the overall technical rating. Both are discussed in more detail below.

### a.    <u>The Proposed Approach Subfactor</u>

For the proposed approach subfactor, the Solicitation indicated that, among other things, offerors were to provide a "detailed discussion of the proposed approaches, methods, and techniques it intends to use in satisfying the requirements of the two evaluation tasks." AR96. This was to include "[a] detailed breakdown of equipment and materials, as appropriate, identifying specific equipment and showing specific materials that will be required," as well as

"matrices of labor hours showing the number of hours for all labor categories, skill level and grade." *Id.* In the technical volume of the proposal, this information was to be uncosted, though costs were to be provided in the cost volume. AR96, 99. For the first evaluation task, the Solicitation specifically indicated that "[t]he contractor shall purchase equipment and supplies to maintain and continue safe, efficient and effective operations on site," and that these purchases might be necessary "when equipment malfunctions or become[s] inoperable on-site or during non-working hours and needs to be replaced." AR80. The Solicitation indicated that "approximately $6,000.00 per month may be expected to be spent on materials and supplies in support of this task." *Id.*

10



**b.    Overall Technical Rating**

**3.    The Past Performance Factor**

The Solicitation required the submission of "past performance information for the prime and each proposed subcontractor who will perform a significant portion of the effort." AR98. This past performance information took the form of questionnaire to be completed by a point of

11

contact from each recent contract that "ha[d] a logical connection" with the work being requested in the Solicitation. *Id.*

Three questionnaires were obtained for SMRC; ███████████████ AR1017. Six questionnaires were obtained for STEM, SMRC's proposed subcontractor; ███████████ ████████████████████ *Id.*

Three questionnaires were obtained for Reema (though one was from its proposed subcontractor, ███████████████ AR1016. Seven questionnaires were obtained for ██████████████████████████ AR1017. The entity that rated ██████████████████████████ ████████████████████████████

On the basis of these questionnaires, both SMRC and Reema were rated ████████ for Past Performance.

### 4.    The Cost Factor

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

## D.    The Responsibility Determination For SMRC

Because the SSA made a preliminary determination that SMRC's offer presented the best value to the Government, she undertook to determine whether SMRC was responsible. *See* AR102 (portion of Solicitation requiring responsibility determination). The SSA took into account two pre-award surveys conducted by the Defense Contract Management Agency (DCMA) to evaluate SMRC's financial capability to perform the work. AR1131. ████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

13

████████████████████████████████ SMRC was able to obtain a Certificate of Competency from the SBA in July 2011. AR1133. Specifically, the SBA notified the Army that the SBA "hereby certifies that [SMRC] possesses the responsibility to perform the proposed contract." *Id.* The SBA further indicated that "[t]he certified concern is therefore entitled to the award without having to meet any further condition of responsibility or eligibility." *Id.*

### E.    The Decision To Award To SMRC

In her Decision Document, the SSA concluded that ████████████████████ ████████████████████████ SMRC presented the best value to the Government. AR1214. ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████ A Pre-Negotiation Objective Memorandum/Price Negotiation Memorandum was subsequently prepared by the contracting officer summarizing the history of the procurement and the final decision, for internal review and approval by various contracting officials. AR1140-96.

On September 22, 2011, the contract between the Army and SMRC was executed. AR1216. A notification of the award was sent to Reema on September 26, 2011 (AR1258-59), and Reema subsequently requested and received a debriefing (AR1260-96).

## II.    EVENTS AFTER SMRC BEGINS PERFORMANCE (SEPTEMBER 2011 TO PRESENT)

### A.    The Issuance Of Task Order 1 To SMRC

On September 27, 2011, the Army issued task order 1 for $133,602.53. *See* AR1297. The task order outlined a variety of tasks that would be performed by SMRC, including

14

management of information technology systems, monitoring of quality control plans, coordinating and tracking deliveries of chemical agent material, inspecting and sanitizing of personal protective equipment, and inspecting and testing of various military equipment. *See* AR1302-18.

**B.** **The SBA's Initial Decision Regarding Reema's Size Protest Against SMRC**

On September 30, 2011, Reema filed a size protest alleging that SMRC was not eligible for the procurement. AR1344. In a decision dated December 29, 2011, an area office of the SBA concluded that SMRC was "not an eligible small business concern" for the procurement. AR1351. The SBA's decision hinged on the "ostensible subcontractor" rule, which "provides that a prime contractor and subcontractor may be treated as affiliates when the subcontractor is performing the primary and vital requirements of the contract, or if the prime contractor is unusually reliant upon the subcontractor." AR1351 (citing 13 C.F.R. § 121.103(h)(4)). The SBA determined that, because of the amount of work that STEM would be performing under the procurement, STEM was an "ostensible subcontractor" of SMRC. AR1358. Accordingly, the SBA "aggregate[d] the size of the average annual receipts of the two firms for the past three years," and determined that they exceeded the $7 million threshold for the procurement. AR1358.

On January 13, 2012, both SMRC and the contracting officer filed an appeal of the SBA's initial decision with the SBA's Office of Hearings and Appeals (OHA).

**C.** **The Army's Analysis Following The SBA's Decision**

Following the decision of the SBA's area office, the Army set out to determine how to handle its existing contract with SMRC in light of the fact that SMRC had been found ineligible

15

for the procurement. The contracting officer prepared a Memorandum for Record on this issue on January 26, 2012 (misdated 2011). *See* AR1359-62.

As the Memorandum sets out, if a timely appeal has been filed with OHA, the contracting officer has to determine "whether performance can be suspended until an appellate decision is rendered." AR1362. In the Memorandum, the contracting officer indicated that the services being provided by SMRC since September 2011 "are integral to the sustainment of the [ECBC] mission." AR1359. The Memorandum further noted that "[t]he areas that are supported in the contract play an integral role in almost every chemical and biological surety operation within [ECBC] and if this support is not provided, then mission failure is probable." *Id.* The impact of the mission failure would include "the inability of our chemists, biologists and engineers to execute funded chemical and biological research and testing." *Id.* Accordingly, the contracting officer concluded that "performance cannot be suspended and it is in the Government's best interest to continue" the contract with SMRC during the pendency of the SBA appeal. AR1362.

### D.    The Current Task Orders

In February 2012, following the expiration of the first task order, the Army issued five new task orders to SMRC. These five task orders have approximately $2.4 million in total value. *See* AR1363 ($519,820.88 for task order 2); AR1387 ($898,415.90 for task order 3); AR1412 ($202,475.27 for task order 4); AR1436 ($425,478.16 for task order 5); AR1461 ($382,531.85 for task order 6).

The tasks being performed under these task orders include the following:

- Managing the information management system for The Environmental Monitoring Laboratory (AR1368);

- Providing "support for the execution of [ECBC's] mission by providing services in the areas of sample collection, laboratory analysis and screening of various sample matrices for chemical and biological agents" (AR1390);

- Inspecting, troubleshooting, repairing, testing, and operating "all military unique and commercial equipment," including filter systems, fume hoods, and air compressors, "totaling nearly 200 items, used to support chemical and biological (CB) operations" (AR1418);

- Providing an expert "in the area of chemical agent munitions and chemical agent munitions destruction," including knowledge of various "destruction technology" such as "the explosive destruction system (EDS) and the transportable detonation chamber (TDC) systems" (AR1419);

- Coordinating the annual review and approval of existing Standard Operating Procedures and the review of new and modified Standard Operating Procedures (AR1440-1441);

- Providing various services related to the storage, tracking, and shipping of various chemical and biological agents (AR1441-42);

- Sanitizing, inspecting, testing, and issuing military/commercial protective masks and industrial respiratory protection equipment "to approximately 2500 personnel who work in proximity to hazardous chemical operations," and providing training in the use of this equipment (AR1467); and

- Inspecting, repairing, testing, and issuing "all military unique and commercial protective clothing to approximately 500 personnel who work in areas related to

chemical surety material operations," and providing "annual Government approved training in the use of the equipment" (AR1467). These five task orders were issued from February 22-28, 2012. *See* AR1363, 1387, 1412, 1436, 1461. The period of performance for all of them was one year, with a one-year option period. AR1374, 1399, 1423, 1446, 1473.

### E.    The SBA's Decision On Appeal

On March 27, 2012, the SBA's OHA decided the appeal of the size decision regarding SMRC. OHA found that the "Area Office did not err in finding [that SMRC] was unusually reliant upon STEM for this contract." AR1502. According to OHA, because SMRC was "affiliated with STEM under the ostensible subcontractor rule, and STEM is not a small [business] concern, [SMRC] is not a small business for this procurement." *Id.*

### F.    The Army Takes Steps To Issue A New Solicitation

In correspondence to Reema in April 2012, the Army made clear that it was working to take steps in accordance with the SBA's decision. Specifically, Reema was informed that, consistent with 13 C.F.R. § 121.1009, the Army had given notice to SMRC that "no more task orders would be issued," and "no options on [existing] task orders would be exercised." Complaint Exhibit 4.

On July 2, 2012, the Army issued a Request for Information (RFI) seeking white papers from entities interested in providing the services that SMRC is now performing. AR1505. The RFI "encouraged" responses from "[a]ll domestic small businesses," and specifically indicated that any respondent "should state if it is a small business and if so, if it is considered small disadvantaged 8(a)." AR1505-06. The RFI indicated that the "requested information is for

18

planning and market research purposes." AR1505. The deadline for responses was July 23,

2012. *Id.* ███████████████

**ARGUMENT**

## I.  THIS COURT'S REVIEW IS DEFERENTIAL TO THE AGENCY

As described below, this Court's review is limited when deciding cross-motions for

judgment on the administrative record in procurement protests. The agency's decision is entitled

to substantial deference, and a disappointed bidder faces a substantial burden in seeking to

overturn that decision.

### A.  Standard For Procurement Challenges

Judicial review of the agency's actions in bid protest cases is not a *de novo* proceeding;

rather, the scope of the review is limited to the administrative record. The proper standard of

review is whether the agency action was arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law based solely upon the administrative record. 28 U.S.C.

§ 1491(b)(1), (4); 5 U.S.C. § 706(2)(A); *Impresa Construzioni Geom. Domenico Garufi v.*

*United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). The Court must consider "whether the

decision was based on a consideration of the relevant factors and whether there has been a clear

error of judgment." *Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 394 (2005)

(quotation omitted).

In reviewing the agency's procurement decision, the Court should recognize that the

decision is entitled to a "presumption of regularity," *Citizens to Pres. Overton Park, Inc. v.*

*Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S.

99 (1977) (citations omitted), and that the Court should not substitute its judgment for that of the

agency. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997); *see also M.W. Kellogg*

19

*Co. v. United States*, 10 Cl. Ct. 17, 23 (1986) (stating that "deference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations"). Thus, the disappointed bidder "bears a heavy burden," and procurement officers are "entitled to exercise discretion upon a broad range of issues confronting them." *Impresa*, 238 F.3d at 1332-33 (quotations omitted). This burden "is not met by reliance on [the] pleadings alone, or by conclusory allegations and generalities." *Bromley Contracting Co. v. United States*, 15 Cl. Ct. 100, 105 (1988) (citation omitted). Because agencies have more discretion when awarding contracts based on best value than on price alone, the protestor's burden is especially heavy in best value procurements. *Office Depot, Inc. v. United States*, 95 Fed. Cl. 517, 527 (2010) (citing *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 380 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004)).

Additionally, if the protestor can show any errors in the procurement process, the protestor must then show that it was "significantly prejudiced" by those errors. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005) (citations omitted). To establish significant prejudice, the protestor must show that "there was a 'substantial chance' it would have received the contract award but for the errors." *Id.* (citations omitted).

B.  **Standard For Judgment Upon The Administrative Record**

Pursuant to RCFC 52.1, this Court reviews an agency's procurement decisions to determine whether they are supported by the already-existing administrative record. The standards applicable to a motion for judgment upon the administrative record differ from those applied in the context of a Rule 56 motion for summary judgment. *Bannum*, 404 F.3d at 1355-56. Unlike a Rule 56 motion, "[p]roceeding under RCFC [52.1] merely restricts the evidence to the agency record." *Id.* at 1356. "Thus, the central inquiry on a motion for summary judgment –

20

whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment – has no bearing on a review of the administrative record." *Tech Sys., Inc. v. United States*, 50 Fed. Cl. 216, 222 (2001); *accord Bannum*, 404 F.3d at 1356 (holding that RCFC [52.1] requires a different standard of review without the burden-shifting and presumptions required pursuant to RCFC 56).

Unlike a motion for summary judgment, the question of whether an issue of material fact is disputed has no bearing upon a review of the administrative record in a record review case, such as a bid protest. The inquiry, instead, is whether, given all the disputed and undisputed facts, the plaintiff has met its burden of proof that the contracting officer's decision was arbitrary, capricious, or contrary to law. *Tech Sys.*, 50 Fed. Cl. at 222 (citing *CCL Serv. Corp. v. United States*, 48 Fed. Cl. 113, 119 (2000)). In reviewing an agency's action under this narrow, deferential standard, "'the focal point for judicial review should be the administrative record already in existence, not some record made initially in the reviewing court.'" *Florida Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *see also Bannum*, 404 F.3d at 1356 (holding that RCFC 52.1 is designed to provide for expedited trial upon a paper record and that the trial court is permitted to make factual findings based upon the record evidence).

## II.   JUDGMENT IN FAVOR OF THE GOVERNMENT IS WARRANTED BECAUSE REEMA CANNOT DEMONSTRATE THAT IT HAS STANDING

As discussed below, Reema cannot show that it had a "substantial chance" of receiving the contract at issue. As a result, it lacks standing to bring this protest.

### A.    To Demonstrate Standing, Reema Must Show That It Had A "Substantial Chance" Of Receiving The Contract

Reema bears the burden to establish jurisdiction. *Myers Investig. & Secur. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). The Tucker Act provides for procurement protests in this Court only by "interested part[ies]." 28 U.S.C. § 1491(b)(1). Interested parties include "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *American Fed. of Govt. Employees v. United States*, 298 F.3d 1298, 1304 (Fed. Cir. 2001) (adopting definition of "interested party" from the Competition in Contracting Act).

In order to have standing as an "interested party," a protester must satisfy a two-part test. First, "the protester must demonstrate that it is an actual or prospective bidder." *Boston Harbor Development Partners, LLC v. United States*, 103 Fed. Cl. 499, 502-03 (2012) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006)). Second, "the protester must demonstrate that it has a direct economic interest in the procurement." *Id.* (citing *Rex Serv. Corp.*, 448 F.3d at 1307). In order to establish a direct economic interest in the procurement, a protester must demonstrate prejudice, and in post-award bid protests, a protester demonstrates prejudice by showing that it had a "substantial chance" of receiving the contract in the absence of the alleged errors by the agency. *Id.*; *see also Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 696-97 (2010).

As we demonstrate below, Reema has failed to demonstrate that it had a substantial chance of receiving the contract because: (1) Reema has not shown that its Technical rating ▮ ▬▬▬▬▬▬ was irrational; (2) even if Reema's Technical Rating were changed to ▬▬▬▬▬, Reema has not demonstrated that it would have presented the best value to the

22

Government; and (3) even if Reema might have presented the best value to the Government, Reema has not shown that it would meet the size standard for this procurement in light of █

████████████

### B.    <u>Reema Has Not Shown That Its Technical Rating Was Irrational</u>

Reema's proposal was rated █████████ for the Technical factor, as the SSA

███████████████████████████████. AR1207.

Since the Technical rating was the most important factor under the Solicitation (AR103), and

████████████████████████████

(AR1362), Reema did not have a "substantial chance" of being awarded the contract. Indeed, in

clarifying the "substantial chance" test, this Court has indicated that, where a bidder's proposal

fails to meet the minimum technical requirements set forth in a solicitation, it cannot be deemed

to have had a "substantial chance" to be the awardee. *See, e.g., HomeSource Real Estate Asset*

*Servs., Inc. v. United States*, 94 Fed. Cl. 466, 481-82 (2010) ("Unsatisfactory" technical rating

rendered proposal technically unacceptable and ineligible for consideration); *Dismas Charities,*

*Inc. v. United States*, 75 Fed. Cl. 59, 61 (2007) (technical unacceptability meant that the protestor

was ineligible to be the awardee). The rationale for this rule is simple: a proposal that "is

technically unacceptable . . . cannot be considered for award" and therefore has "no chance of

receiving the award." *Dismas*, 75 Fed. Cl. at 61 (quotation omitted).

Reema challenges its ██████████ rating for the Technical factor, which was based

██████████████████████████

██████████  Reema claims that it complied with the Solicitation and that its proposal was treated

disparately. Reema is incorrect.

The Solicitation indicated that, for each of two sample tasks, offerors were to provide "[a] detailed breakdown of equipment and materials, as appropriate, identifying specific equipment and showing specific materials that will be required," as well as "matrices of labor hours showing the number of hours for all labor categories, skill level and grade." AR96. Though this information was to be uncosted in the technical volume of an offeror's proposal, the Solicitation made clear that costs were to be provided in the cost volume. AR96, 99. For the first evaluation task, the Solicitation specifically indicated that "[t]he contractor shall purchase equipment and supplies to maintain and continue safe, efficient and effective operations on site," and that these purchases might be necessary "when equipment malfunctions or become[s] inoperable on-site or during non-working hours and needs to be replaced." AR80. The Solicitation indicated that "approximately $6,000.00 per month may be expected to be spent on materials and supplies in support of this task." AR80.

However, in Reema's proposal, it indicated: █████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

24

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ Therefore, Reema's claim of

disparate treatment falls flat.

In this case, where the SSA rationally concluded ████████████████

████████████████████, there is no basis for second-guessing Reema's Technical

rating of ████████. "It is beyond cavil that 'technical ratings . . . involve discretionary

determinations of procurement officials that a court will not second guess.'" *Software Eng'g*

*Servs., Corp. v. United States*, 85 Fed. Cl. 547, 554 (2009) (quoting *E.W. Bliss Co. v. United*

*States*, 77 F.3d 445, 449 (Fed. Cir. 1996)); *see also Beta Analytics Int'l, Inc. v. United States*, 67

Fed. Cl. 384, 395 (2005) ("[C]hallenges concerning the minutiae of the procurement process in

such matters as technical ratings . . . involve discretionary determinations of procurement

officials that a court will not second guess.") (quotation omitted). "The evaluation of proposals

for their technical excellence or quality is a process that often requires the special expertise of

procurement officials, and thus reviewing courts give the greatest deference possible to these

determinations." *Beta Analytics*, 67 Fed. Cl. at 395 (citations omitted). Reema's Technical

rating should not be disturbed.

Because of its ████████ rating for its Technical proposal, Reema could not be

eligible for award. Accordingly, Reema has failed to demonstrate standing in this case.

## C.     Reema Has Not Put Forth A Scenario Under Which It Would Have Prevailed In A Best Value Analysis

Even if Reema's Technical rating were changed to ████████, it still has not

demonstrated how it would have a substantial chance of prevailing in a "best value" analysis.

25

Procurement officials have substantial discretion to determine which proposal represents the best value for the Government. *E.W. Bliss*, 77 F.3d at 449. The best value process is, by definition, "a tradeoff process . . . when it may be in the best interest of the Government to consider award to other than the lowest-priced offeror or other than the highest technically rated offeror." 48 C.F.R. § 15.101-1. In evaluating the agency's best value determination, the Court's "task is to ensure that the contracting officer examined the relevant data and articulated a 'rational connection between the facts found and the choice made.'" *Banknote*, 56 Fed. Cl. at 390 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The record reflects that the SSA performed a rational best value determination, which was documented in her Decision Document. The SSA determined that ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

Accordingly, the SSA rationally concluded that SMRC "offers the best overall value to the Government." *Id.*

Reema makes no attempt to demonstrate how it would prevail in a best value analysis, even if its Technical rating were raised to ████████. In this alternate scenario, Reema would have a Technical rating of ████████████████████████████, while SMRC would have a Technical rating of ██████████████████████

████████████████████████████████ Accordingly, Reema's proposal would still be inferior from a technical standpoint.

In addition, Reema has not demonstrated that ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

Under these circumstances, Reema cannot credibly suggest that, even if its Technical rating were raised to ████████, it would have a substantial chance of prevailing in the "best value" determination. Reema's proposal would present no clear advantages over SMRC's proposal that would favor Reema in the tradeoff analysis.

**D.    Reema Has Not Shown That It Is A Small Business For This Procurement**

Finally, Reema cannot show that it is an interested party because it has not demonstrated that it is a small business for purposes of this procurement. Because Reema was ██████████ ████████████████████████████████████, and therefore Reema likely would be ineligible under the applicable size standard. ████████████

████████████████████████████████████████████████████████

████████████████████████████████

For instance, in determining that SMRC was not eligible for this procurement because of its heavy reliance on its proposed subcontractor (STEM), the SBA noted that SMRC had "limited exposure to contracts of this nature," because SMRC is "largely an information

27

technology firm," while its proposed subcontractor STEM is "an environmental sciences firm" supplying the necessary expertise. AR1495. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

The SBA further noted that SMRC's extreme reliance on STEM for technical knowledge was demonstrated throughout the proposal, and in particular was evident because "*all* of [SMRC's] managerial and supervisory employees for this contract are currently STEM employees." AR1500 (emphasis in original). ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Under these circumstances, it is curious that Reema feels that its proposal is worthy of award at this juncture. Reema makes no attempt to demonstrate how its proposal would survive a size challenge, ████████████████████████████████████████

████████████

28

In conclusion, Reema lacks standing in this case because: (1) it was properly rated as ██████████ for the Technical component of the Solicitation; (2) Reema has presented no scenario under which it could prevail in a "best value" analysis; and (3) Reema has not shown that it is eligible for this procurement under the applicable size standard.[1]

## III.    THE ARMY'S DECISION TO CONTINUE ITS CONTRACT WITH SMRC AFTER THE SBA'S DECISIONS IS CONSISTENT WITH APPLICABLE LAW

As we demonstrate below, the Army acted properly in continuing its contract with Reema after the SBA Area Office's decision and after OHA's decision on appeal.

### A.    The Army Was Permitted To Continue Its Contract With SMRC Following the SBA's Initial Decision

The Army acted properly in continuing SMRC's contract following the SBA's initial decision. Specifically, SBA regulations indicate that "[i]f a timely OHA appeal is filed after contract award, the contracting officer must consider whether performance can be suspended until an appellate decision can be rendered." 13 C.F.R. § 121.1009(g)(2)(ii). The contracting officer in this case followed this regulation precisely.

In a memorandum that she authored approximately one month after the SBA's initial decision, the contracting officer noted that appeals of the SBA's initial decision had been filed with OHA. Therefore, she undertook to determine whether performance could be suspended until OHA had rendered a decision. AR1359-62. The memorandum indicated that the services being provided by SMRC since September 2011 "are integral to the sustainment of the [ECBC] mission." AR1359. The memorandum further noted that "[t]he areas that are supported in the contract play an integral role in almost every chemical and biological surety operation within

---

[1] Even if Reema does have standing, for the same reasons discussed in the standing analysis, Reema cannot show that the award to SMRC was irrational at the time that award was made in September 2011.

29

[ECBC] and if this support is not provided, then mission failure is probable." *Id.* The impact of the mission failure would include "the inability of our chemists, biologists and engineers to execute funded chemical and biological research and testing." *Id.* Accordingly, the contracting officer concluded that "performance cannot be suspended and it is in the Government's best interest to continue" the contract with SMRC. AR1362.

Reema cites various regulations in order to conjure up a claim that the Army behaved improperly. Yet the regulations it cites (*see* Pl. Br. at 29) only apply where the SBA protest occurs *prior* to award. *See* FAR § 19.302(h)(1) ("After receiving a protest involving an offeror being considered for award, the contracting officer shall not award the contract . . . ."); 13 C.F.R. § 121.1009(a)(2) ("The contracting officer may award a contract after receipt of a protest if the contracting officer determines in writing that an award must be made to protect the public interest."); 13 C.F.R. § 121.1009(a)(3) ("If SBA does not issue its determination within 15 business days (or request an extension that is granted), the contracting officer may award the contract . . . ."). The applicable regulation is 13 C.F.R. § 121.1009(g)(2)(ii), and as discussed above, that regulation plainly permits performance to continue where an OHA appeal has been filed after contract award.

### B.    The Army Was Permitted To Continue Its Contract With SMRC Following The SBA's Appeal Decision

The Army acted properly in continuing SMRC's contract, but deciding to not exercise any options, following the SBA's appeal decision. The applicable regulation provides that "[i]f OHA affirms the size determination finding the protested concern ineligible, the contracting officer shall either terminate the contract or not exercise the next option." 13 C.F.R. § 121.1009(g)(2)(iii). In this case, the Army has elected to not exercise the options available under

30

all of the task orders pursuant to which SMRC is providing services. *See* AR1374 (providing for one-year option under task order 2), AR1399 (same for task order 3), AR1423 (same for task order 4), AR1446 (same for task order 5), AR1473 (same for task order 6). As a result, the task orders will expire in February 2013, one year after they were issued.

Yet again, Reema misstates the law and facts in order to manufacture an allegation of impropriety by the Army. *First*, Reema claims that, under FAR § 52.233-3, the Army was required to terminate SMRC's contract after the SBA's final protest decision. *See* Pl. Br. at 29-30. However, that FAR provision does not apply to SBA protests. Specifically, the regulation indicates that it applies only to a "protest" as that term is defined in FAR § 33.101. In turn, FAR § 33.101 states as follows: "Protest means a written objection by an interested party to any of the following: (1) A solicitation or other request by an agency for offers for a contract for the procurement of property or services. (2) The cancellation of the solicitation or other request. (3) An award or proposed award of the contract. (4) A termination or cancellation of an award of the contract . . . ." FAR § 33.101. A protest filed at the SBA regarding an offeror's size status does not fall within any of these categories.

*Second*, Reema claims that the history surrounding recent amendments to 13 C.F.R. § 121.1009 indicate that termination of the contract is required. Pl. Br. at 30-32. Yet this history establishes exactly the opposite point – specifically, that termination is not required in every case where OHA issues an adverse size decision. The amendments were intended to correct the fact that the predecessor to 13 C.F.R. § 121.1009 had, in some cases, been interpreted by the Government Accountability Office (GAO) to require termination if an adverse size determination was received after award. *See, e.g., Spectrum Security Services, Inc.*, Nos. B-297320.2 & B-297320.3 (GAO Dec. 29, 2005) (holding that business found to be ineligible after

31

award had to be terminated). *But see Greystones Consulting Group, Inc.*, No. N-402835 (GAO June 28, 2010) (carving out an exception to an absolute termination requirement where continued performance was required to meet the agency's needs, and agency planned "to not exercise the option year of the contract and to resolicit with due diligence in order to make a new contract award").

The drafters of the new regulation expressed concern that the language of the existing regulation was being misinterpreted by the GAO: "Over the last several years, the [GAO] has sustained protests, and in many cases recommended termination, where a firm was found to be other than small and the decision was received after award." 75 Fed. Reg. 9129-01, 9130-31 (Mar. 1, 2010) (citing *Spectrum Security Services*). The drafters noted that the SBA protest process "must be balanced so that it does not impede the procuring agency's ability to accomplish its mission." *Id.* at 9130.

Accordingly, the drafters of the new regulation sought to clarify an agency's options after SBA initial and appellate decisions, and specifically to make clear that an alternative to termination is acceptable. The drafters indicated that, after award, "if the SBA issues an initial decision that a concern is ineligible, . . . . the procuring agency must take some action if the decision is not overturned on appeal, such as terminating the award or not exercising the next option." *Id.* at 9131. Accordingly, the new regulation reflects the availability of an alternative to termination in the event of an adverse OHA decision. *See* 13 C.F.R. § 121.1009(g)(2)(iii) ("If OHA affirms the size determination finding the protested concern ineligible, the contracting officer shall either terminate the contract or not exercise the next option."). The Army in this case is following this regulation precisely, choosing to not exercise options that are available to it under all of the existing task orders.

32

*Finally*, Reema incorrectly claims that "[i]n the current contract situation, there are no options for the CO to avail [herself]" and therefore "[t]he only alternative left for the CO is 'to terminate the contract.'" Pl. Br. at 32.  As the record demonstrates, the Army has options that it has not yet exercised under all of the task orders pursuant to which SMRC is providing services. *See* AR1374, 1399, 1423, 1446, 1473.

At bottom, Reema's distortions of the governing law and the facts of this case cannot stand.  The inescapable truth is that the Army has complied with applicable law in electing to continue its contract with SMRC following the SBA's decisions, but to not exercise options or issue additional task orders.

## IV.   REEMA'S OTHER ASSERTIONS OF ERROR DO NOT WITHSTAND SCRUTINY

Reema makes sundry other assertions about the Army's conduct in making award to SMRC.  None of them withstands scrutiny.

### A.   The Army's Delay In Making Award Is Not Actionable

Reema repeatedly makes reference to the fact that the Army required two years to make award under the Solicitation following the receipt of proposals.  *See, e.g.*, Pl. Br. at 3, 28.  Reema sets forth no theory, however, upon which this delay is actionable.

Indeed, the FAR explicitly allows an agency to extend the bid acceptance period when administrative issues are encountered during the award process.  FAR § 14.404–1(d) provides that "[s]hould administrative difficulties be encountered after bid opening that may delay award beyond bidders' acceptance periods, the several lowest bidders whose bids have not expired (irrespective of the acceptance period specified in the bid) should be requested, before expiration of their bids, to extend in writing the bid acceptance period (with consent of sureties, if any) in

33

order to avoid the need for resoliciting." 48 C.F.R. § 14.404-1(d). This is precisely what the Army did here in response to its "administrative difficulties" – specifically, its "[d]ifficulties ensuring sufficient personnel support [that] resulted in numerous delays with finalizing the subgroup reports." AR1031.

As this Court has stated, "tardiness does not create a right to damages." *Smith v. United States*, 34 Fed. Cl. 313, 327 (Fed. Cl. 1995). Put differently, "FAR § 14.404–1(d) is aimed at administrative efficiency; the provision states that the government should request extensions to avoid the need for resolicitation. No substantive right is created on which a contractor could erect a damage claim." *Id.*

In any event, if Reema had any objections to the delays in the award process and felt that it was being prejudiced, it is too late for Reema to raise these objections. Reema extended the validity of its proposal on numerous occasions throughout the two-year period without indicating any objections to doing so. *See* AR971-85. If Reema objected to the timing of the award, it needed to bring a protest on the issue prior to the award, and having failed to do so, it waived its right to raise the issue. *See Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313-15 (Fed. Cir. 2007) ("recogniz[ing] a waiver rule in § 1491(b) bid protests actions"). This follows from the rule that "[w]here there is a deficiency or problem in a solicitation . . . the proper procedure for the offeror to follow is not to wait to see if it is the successful offeror before deciding whether to challenge the procurement, but rather to raise the objection in a timely fashion." *Id.* at 1314 (quotation omitted). The two-year period provided ample opportunity for Reema to raise any challenge about the timing of award; its failure to do so, and instead wait to see whether it would be awarded the contract, bars its complaint now.

34

**B.      A Contractor Is Not Required To List A Specific NAICS Code To Compete For A Procurement**

Reema complains that the printout of the Central Contractor Registration (CCR) for SMRC did not list NAICS Code 541620, Environmental Consulting Services, on SMRC's profile. *See* Pl. Br. at 26; AR1135-38. According to Reema, this provides "irrefutable proof" that SMRC was not eligible for this procurement. Pl. Br. at 26. Reema points to no authority for its argument, and that is because Reema is incorrect.

CCR recently became defunct, and has now been integrated into the Government's new System for Award Management. *See* www.sam.gov ("The System for Award Management (SAM) is a free web-site which consolidates Federal procurement systems . . . . Currently CCR, FedReg, ORCA and EPLS have been migrated into SAM."). As the Government-published *System for Award Management User Guide* makes clear, a contractor is able to pick any NAICS code it desires and add it to its profile at any time using the Government's electronic system; there is no screening process. *See System for Award Management User Guide*, Volume 1.8, at 126 ("You can add or change NAICS Codes at any time.").[2] As the *Guide* further advises contractors, "Nothing precludes you from bidding on an interagency transaction that has a NAICS code that you have not listed in your record." *Id.*

Indeed, as the SBA regulations make clear, the purpose of NAICS codes is to set the size threshold for a small business procurement. *See, e.g.,* 13 C.F.R. § 121.402(a) ("A concern must not exceed the size standard for the NAICS code specified in the solicitation."); 13 C.F.R. § 124.501(h) ("A Participant must certify that it qualifies as a small business under the size standard corresponding to the NAICS code assigned to each 8(a) contract."). For instance, in

---

[2] The *Guide* is available at https://www.sam.gov/sam/transcript/SAM_User_Guide_v1.8.pdf (last accessed Aug. 7, 2012).

this case, the Code 561420 meant that contractors had to fall below the $7 million size threshold. As the *Guide* reflects, there is nothing requiring that a contractor list a NAICS code on its profile before it is eligible to bid on procurements classified under that NAICS code.

### C.   No Preaward Notice Is Required For 8(a) Procurements

Reema argues that the Army was required to send a preaward notice to unsuccessful offerors under FAR § 15.503(a)(2), which sets forth a general rule requiring preaward notices for small business procurements. *See* Pl. Br. at 28-29. Yet in that exact same FAR subsection, there is an exception for 8(a) procurements: "The [preaward] notice is not required when the contracting officer determines in writing that the urgency of the requirement necessitates award without delay *or when the contract is entered into under the 8(a) program.*" FAR § 15.503(a)(2)(iii) (emphasis added). Reema's failure to mention this exception is striking, especially since Reema quoted FAR § 15.503(a)(2)(ii), the immediately preceding subsection. *See* Pl. Br. at 28-29. The regulation could not be clearer that the Army was not required to issue a preaward notice for this 8(a) procurement.

### D.   Reema Misstates The Facts And Law Concerning The Certificate Of Competency

In this case, the contracting officer made a determination that ███████████████████ based on the preaward surveys completed by DCMA. ███████████████████

███████████████████████████████████████

███████████████████████████████ *See* FAR § 19.809 ("The contracting officer should request a preaward survey of the 8(a) contractor whenever considered useful. If the results of the preaward survey or other information available to the contracting officer raise substantial doubt as to the firm's ability to perform, the contracting officer *must* refer the matter

to SBA for Certificate of Competency consideration") (emphasis added).  The SBA issued the COC.  AR1133.  This COC constitutes "conclusive" evidence of SMRC's responsibility, and the contracting officer was required to award the contract to SMRC following the issuance of the COC.  *See* FAR § 19.602-4(b) ("The contracting officer shall award the contract to the concern in question if the SBA issues a COC after receiving the referral.  An SBA-certified concern shall not be required to meet any other requirements of responsibility.  SBA COC's are conclusive with respect to all elements of responsibility of prospective small business contractors.").

Despite the fact that the contracting officer followed applicable regulations that dictated the actions she was required to take, Reema persists in mounting various specious attacks concerning the COC.  *First*, Reema argues that the bankruptcy of SMRC's subcontractor should have been considered in the responsibility determination.  *See* Pl. Br. at 9-10.  But, assuming for the sake of argument that the contracting officer did not take into account the bankruptcy, it is not clear how Reema was prejudiced.  The contracting officer █████████████████████ ████████████████████████████████████████████  She was then required to refer the matter to the SBA for a COC and was required to accept the COC as "conclusive."  If the SBA chose to issue a COC notwithstanding the bankruptcy of SMRC's proposed subcontractor, the Army cannot be faulted for that result.

*Second*, Reema notes that the SBA's initial decision (issued in December 2011) contained language indicating that the COC report contained factual errors.  *See* Pl. Br. at 11 (citing AR1357).  It is not clear what report the SBA's decision is referring to, and whether the Army received a copy of the report.  But the fact remains that the SBA issued a COC to SMRC in July 2011, the contracting officer was required to accept it as "conclusive," and award was made to SMRC in September 2011.  The SBA's second-guessing in December 2011 (three

37

months after award) of its own decision to issue the COC, did not require any action by the contracting officer. Indeed, the SBA did not, as Reema incorrectly suggests, indicate that "the COC should never have been issued" or otherwise take any steps to revoke the COC. Pl. Br. at 11.

*Third*, Reema claims that the contracting officer's determination of ███████████ should have impacted SMRC's technical and past performance ratings, such that SMRC should not have received a rating that its proposal ███████████████ *See* Pl. Br. at 11, 28. Reema misunderstands the Solicitation. The Technical factor required offerors to demonstrate their competency in four areas: proposed approach (such as the "methods and techniques it intends to use in satisfying the requirements"), personnel plan (addressing the personnel who would support the contract), management plan and tools (dealing with "organizational structure" and "ensur[ing] sufficient execution of any task order"), and facilities (specifically, the facilities that would be used to perform work offsite). AR96-97. The Past Performance factor, as its name suggests, was based on past performance in other contracts. AR98. Following evaluation of the Technical, Past Performance, and Cost factors, the Army determined which offeror presented the best value to the Government. A responsibility determination was a separate process to be based on preaward surveys conducted by DCMA. *See* AR102. Contrary to Reema's suggestion, the Solicitation did not include a financial capability component in any of the evaluation factors, though financial capability would certainly be taken into account prior to award through the responsibility analysis. Reema's attempt to rewrite the proposal to include a new unstated evaluation metric for financial capability (separate from the responsibility determination) should be rejected.

38

### E.    The Price Negotiation Memorandum Does Not Contain The Errors Suggested By Reema

Reema claims that the contracting officer made various errors in her Price Negotiation Memorandum (PNM) (Pl. Br. at 11-12), but none of these alleged errors actually exist. *First*, Reema claims that the tables appearing at AR1145 and AR1175 do not accurately summarize the consensus ratings for the offerors. But they do. The tables mirror the final ratings for all offerors as set forth in the Decision Document. *Compare* AR1145, 1175, *with* AR1198-99, 1211.

*Second*, Reema claims that Tables 3 and 4 of the PNM "do not reflect the hours shown in the proposals." Pl. Br. at 12. Again, Reema is wrong. Table 3 is titled "Proposed Hours By Task Compared to IGCE" (AR1162) and contains the exact information from the offerors' proposals (*see* AR392, 404, 331-34, 902-03). Table 4 is titled "Most Probable Hours By Task Compared To IGCE," and consistent with this title, contains the Army's assessment of the most probable costs for each offeror as set forth in the Decision Document. *See* AR1213-14.

*Finally*, Reema makes various confusing allegations of error for Tables 5 and 6 of the PNM. Pl. Br. at 12. But the tables are exactly what they purport to be. Table 5 is titled, "Evaluation Tasks 1 through 2 Total Costs by Offeror." AR1163. These figures exactly match those set forth in the Decision Document. AR1198. Table 6 is entitled "Total Proposed Cost by Task," and, as the title suggests, the figures are taken exactly from the offerors' proposals. *See* AR330, 333, 577, 902-03.

### F.    The Personal Attacks On The Contracting Officer Are Unfounded

Reema resorts to various personal attacks on the contracting officer, claiming that she has "a strong personal animus against Reema" and that she had a "predetermined path of awarding

this contract to SMRC." Pl. Br. at 11, 35. Reema claims that the contracting officer filed a "frivolous appeal" of the SBA's initial decision, "without legal representation from the Army," and that her argument in the appeal was "pure folly." Pl. Br. at 34-35. These allegations lack merit.

The contracting officer acted well within her rights in appealing the SBA's initial decision to OHA. In fact, SBA regulations explicitly state that "[a]ppeals from size determinations . . . may be filed with OHA by . . . [t]he procuring agency contracting officer responsible for the procurement affected by a size determination." 13 C.F.R. § 134.302(d). The contracting officer appealed because the Army wanted the SBA to understand that Reema's technical proposal was deficient and therefore Reema lacked standing to protest SMRC's size. *See* AR Tab 49; *see also* 13 C.F.R. § 121.1001(a)(2)(i) (authorizing SBA protests from a competing offeror only if the competing offeror was "not eliminated [by the agency] for reasons unrelated to size"). The SBA did not deem the contracting officer's argument to be "frivolous," nor did the SBA label it "pure folly," and indeed standing is a common issue raised in protest actions. Reema's suggestion that the contracting officer filed the appeal "without legal representation from the Army" is also unfounded: not only is it unsupported by anything in the record, but the regulation pursuant to which the appeal must be filed expressly states that the appeal must come from "[t]he procuring agency contracting officer." 13 C.F.R. § 134.302(d). Consistent with many of its arguments in this case, Reema seems to find fault with the fact that the contracting officer carefully adhered to all applicable laws and regulations.

Reema cannot overcome the presumption that the contracting officer acted in good faith, as it has no evidence of improper motive, much less the "clear and convincing" evidence that the

40

law requires. *Am-Pro Protective Agency Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002).

## V.    REEMA SHOULD BE PRECLUDED FROM ARGUING THAT THE ARMY MUST ISSUE A NEW SOLICITATION BASED ON REEMA'S FALSE DEADLINES

In the initial status conference in this case, the undersigned counsel indicated to the Court that the Army was working to issue a new procurement for the services being performed by SMRC so that a new contractor would be in place by the time SMRC's existing task orders expire in February 2013. Reema's counsel indicated that it wanted the new procurement to be expedited because Reema would be graduating from the 8(a) program at some unspecified time in October or November 2012. The Court set the schedule in this matter seemingly based on this representation, so that it could issue a decision with ample time before Reema's graduation from the 8(a) program. Nonetheless, because Reema's counsel was unsure of the exact date upon which Reema would graduate from the 8(a) program, the Court ordered that Reema indicate, in its opening brief in this case, the date certain upon which the graduation would occur.

Reema's brief, however, is silent as to the graduation date. Perhaps that is because the date is substantially later than its counsel had represented to the Court. According to the SBA's publicly accessible database, the graduation date is not until January 15, 2013.[3] Since the Army intends to make award so that a new contractor will be in place by the end of February 2013, it is highly likely that offers would have to be submitted by mid-January 2013. This offer date would be the relevant time for evaluating 8(a) eligibility, and therefore Reema seemingly is eligible to compete for any 8(a) solicitations as long as it submits its offer by January 15, 2013. *See* 13

---

[3] The database is available at http://web.sba.gov/pro-net/search/dsp_dsbs.cfm (last accessed Aug. 10, 2012). Reema's profile can be access by typing "Reema" (without quotes) into the box marked "Company Name or Trade Name" and clicking "Search Using These Criteria."

C.F.R. § 121.603(a), (c)(1) (indicating that 8(a) certification is based on an entity's size status at the time of offer, and "subsequent changes in size up to the date of award . . . will not affect the firm's size status for that procurement"). Thus, Reema's concern from the initial status conference that it would graduate from the 8(a) program before it is able to submit an offer for any new solicitation issued by the Army is misplaced, and it is therefore not surprising that Reema omitted any mention of its graduation date from its opening brief.

In any event, Reema's contention that it is eager to bid on a new contract during the limited time remaining before its graduation from the 8(a) program is also highly dubious in light of the fact that ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████ Particularly in light of the ostensible subcontractor issues encountered with SMRC, ████████████████ ███████████████████████████████████████████ ████████████████████████ the Army is justifiably concerned about whether there can be adequate competition from qualified 8(a) businesses in the future. ████████████████ ████████████████████ its assertion that it is eager for the contract to remain in the 8(a) program, and may also undercut the Army's ability to issue a solicitation restricted to 8(a) businesses.

42

## VI.    REEMA HAS NOT DEMONSTRATED ENTITLMENT TO ANY RELIEF

As we establish above, Reema lacks standing and has failed to demonstrate that the Army acted unreasonably, arbitrarily, capriciously, or contrary to law.  Consequently, Reema is not entitled to any relief in this case.

In the event the Court identifies a prejudicial error in this case, Reema has not demonstrated entitlement to any relief.  Specifically, Reema seeks "bid and proposal costs, counsel fees, and injunctive relief terminating the contract with SMRC, and awarding to the next acceptable offeror."  Reema's requests are without merit.

### A.    Reema Has Not Demonstrated Entitlement To Bid And Proposal Costs

The FAR states that bid and proposal costs "are allowable as indirect expenses on contracts to the extent that those costs are allocable and reasonable."  48 C.F.R. § 31.205-18(c); *see also Coflexip & Services, Inc. v. United States*, 961 F.2d 951, 952 (Fed. Cir.1992) (holding that "proposal preparation costs that are reasonable and allocable may be recovered by the contractor").  A cost is allocable to a Government contract if it is "incurred specifically for the contract."  48 C.F.R. § 31.201-4.  A cost is reasonable "if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business."  48 C.F.R. § 31.201-3(a).

Importantly, the burden is on the plaintiff to prove entitlement to bid and proposal costs. *Lion Raisins, Inc. v. United States*, 52 Fed. Cl. 629, 631 (2002).  Specifically, "a protestor seeking to recover its proposal preparation costs must submit evidence sufficient to support its claim that those costs were incurred and are properly attributable to proposal preparation." *Id.* (quotation omitted).  Reema does not make any attempt to satisfy its burden, and instead simply

makes the conclusory assertion that these costs should be awarded. *See* Pl. Br. at 36.

Accordingly, Reema has failed to demonstrate entitlement to bid and proposal costs.

**B. Reema Has Not Demonstrated Entitlement To Costs And Attorney Fees Under The Equal Access To Justice Act**

Reema makes the conclusory assertion that "[a]t a minimum, the Court must grant Reema its counsel fees and costs under the Equal Access to Justice Act" (EAJA). Reema's argument for EAJA fees is premature, as there has been no final judgment, nor has Reema submitted an EAJA application. In any event, Reema makes no effort to demonstrate that it meets any of the factors required for relief under EAJA. Specifically, assuming that Reema prevails in this litigation, it is still required to demonstrate that: (1) it is a corporation whose net worth does not exceed $7,000,000 and does not have more than 500 employees at the time the civil action is filed; and (2) that the position of the Government in this litigation was not "substantially justified." 28 U.S.C. § 2412(d). Reema cannot make either of these showings.

*First*, there are significant questions surrounding the net worth of Reema. Specifically, as noted above, Reema and ███████████████████ for purposes of this procurement. It is highly possible that, █████████████████████

████████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

████████████████████████████████[4]

---

[4] Notably, Reema's attorney in this matter was SciTech's attorney in the bankruptcy matter involving STEM. *See, e.g.*, *In re STEM International, Inc.*, No. 11-18831 (Bankr. D. Md.), Docket Entry #23.

*Second*, the position of the Government in this case is substantially justified. As has been shown above, the Government had ample justification for all of its actions, including its decision in September 2011 that SMRC presented the best value to the Government, and its decision in mid-2012 that it was not required to terminate its contract with SMRC after the SBA's decision finding that SMRC was ineligible for the procurement.

## C.    Reema Has Not Demonstrated Entitlement To Injunctive Relief

As the party seeking injunctive relief, Reema bears the extremely heavy burden of demonstrating its entitlement to this extraordinary relief by clear and convincing evidence. *See e.g., Cincom Sys.*, 37 Fed. Cl. at 268. Reema faces an even greater burden when, as here, it seeks injunctive relief, which, if granted, would interfere with Governmental operations. *See, e.g., Yakus v. United States*, 321 U.S. 414, 440 (1940); *Virginia Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937).

The Court must consider three criteria before ordering a permanent injunction: (1) "whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief;" (2) "whether the balance of hardships to the respective parties favors the grant of injunctive relief;" and (3) "whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). The grant of an injunction is "extraordinary relief" and, therefore, the Court applies "exacting standards." *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996). This Court cannot order award of a contract to Reema, or select a contractor for the Army. *CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 559 (2000).

The Army evaluated the proposals in accordance with the stated evaluation criteria in the Solicitation and at all times acted consistent with applicable law, statute, and regulation.

45

Accordingly, Reema cannot demonstrate entitlement to a permanent injunction. Even if this Court were to find that the Army made an error during the procurement process that was prejudicial to Reema, Reema is not automatically entitled to the extraordinary relief it requests.

### 1.    Reema Has Not Demonstrated That It Will Suffer Irreparable Harm If The Court Does Not Issue a Permanent Injunction

To constitute irreparable harm, an alleged injury must be "certain and great," not theoretical. *Tenacre Found. v. INS*, 78 F.3d 693, 695 (D.C. Cir. 1996) (quotation omitted); *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Moreover, "[n]ormally, an injury is not considered 'irreparable' if the only injury alleged is monetary loss." *Chapman Law Firm Co. v. United States*, 67 Fed. Cl. 188, 193 (2005). "In every procurement award there are generally more losers than winners. To find that a losing procurement participant suffers irreparable harm merely because it did not succeed with its contract proposal would create in the losing party an automatic right to injunctive relief." *San Diego Beverage & Kup v. United States*, 997 F. Supp. 1343, 1347 (S.D. Cal. 1998).

Reema has not identified any irreparable harm, specific to this procurement, that it would suffer if this Court does not issue a permanent injunction. Its unsupported allegation that it has been deprived of a chance to compete fairly cannot meet the standard for irreparable harm simply because, if it did, "any bid protest would involve an irreparable injury." *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001). Such an allegation amounts to nothing more than a claim of monetary harm, and "[n]ormally, an injury is not considered 'irreparable' if the only injury alleged is monetary loss." *Chapman Law Firm*, 67 Fed. Cl. at 193; *see also Spherix, Inc. v. United States*, 62 Fed. Cl. 497, 506 (2004) ("economic loss without more does not rise to the level of irreparable injury."). Automatically finding irreparable harm in the bid protest context

46

based upon deprivation of a fair opportunity to compete would create a presumption in favor of injunctive relief, which is impermissible. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006).

In addition, Reema's claim of irreparable harm is belied by the fact that it waited nine months after contract award to bring its protest in this Court. If Reema truly felt that it was irreparably harmed by the Army's decision not to award it the contract, it begs the question as to why it did not begin suffering this irreparable harm until nine months had elapsed after contract award. In addition, if Reema still desired to compete for the work at this juncture, ███████

████████████████████████████████████████

### 2. Reema Has Not Demonstrated That It Is In The Public Interest To Grant A Permanent Injunction

While the public interest is served by maintaining the integrity of the procurement system, "[i]t is equally clear, however, that a procuring agency should be able to conduct procurements without excessive judicial infringement upon the agency's discretion." *Aero Corp. v. United States*, 38 Fed. Cl. 237, 242 (1997) (citation omitted). Reema has failed to show that the Army compromised the integrity of the procurement system. However, it is in the public's interest for the Army to allow SMRC to continue performing the work under its existing task orders. SMRC has already been performing for nine months, and the services being provided are critical to the Army's mission. Under these circumstances, Reema has not shown that it is in the public interest to grant a permanent injunction.

### 3. The Balance Of Harms Favors The Government

Finally, Reema has not demonstrated that the balance of harms favors a permanent injunction in this matter. The balance of harms in this case favors the Government, because

47

SMRC has been performing its work for nine months, and it would be disruptive for the Army to be forced to immediately be forced to terminate its contract with SMRC, without having a new contractor in place. It will take substantial time for the Army to re-solicit the contract, and in the meantime, it is critical that SMRC continue providing services under its existing task orders.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant this cross-motion for judgment on the administrative record and deny Reema's motion for judgment on the administrative record.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

OF COUNSEL:

CAPTAIN MICHAEL E. BARNICLE
Trial Attorney
Contract and Fiscal Law Division
U.S. Army Legal Services Agency
Fort Belvoir, VA 22060-5546

JANE POLING
Associate Counsel
Research, Development, and Engineering
    Command
Aberdeen Proving Ground, MD 21005

s/ Nicholas Jabbour
NICHOLAS JABBOUR
Trial Attorney
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0338
Facsimile: (202) 307-0972
E-mail: Nicholas.Jabbour@usdoj.gov

*Attorneys for Defendant*

August 10, 2012

48